Paul Henry MARSHALL and Roy Thomas Marshall, Petitioners-Appellants,

v.

Jim ROSE, Warden, Respondent-Appellee.

No. 73–1361.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 12, 1974.

Decided June 25, 1974.

Frank L. Flynn, Jr. (court appointed), Knoxville, Tenn., for petitioners-appellants.

Robert H. Roberts, Asst. Atty. Gen., Nashville, Tenn., for respondent-appellee; David M. Pack, Atty. Gen. & Reporter, of counsel.

Before EDWARDS, McCREE, and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

This appeal from the denial of a petition for a writ of habeas corpus, 28 U. S.C. § 2241, requires us to determine whether a state trial court committed prejudicial constitutional error when it admitted a robbery victim's in-court identification of appellants without first finding that this identification had not been irreparably tainted by an unconstitutional showup conducted in the absence of appellants' counsel. The district court held that admission of this evidence violated the Constitution, but found the error harmless. We hold that the district court erred and reverse.

On June 22, 1967, a sixty-six year old man who lived alone in an isolated part of East Tennessee was robbed at gunpoint outside his home by two masked men, one of whom shot him in the abdomen. Before fleeing, the robbers took

Six Thousand, Three Hundred dollars from his person and bound him hand and foot. Despite his severe injury, the victim was able to free himself and to walk a considerable distance to a neighbor's home for help. He was hospitalized for his wounds for twenty days.

On July 6, the appellants, Roy and Paul Marshall, who are brothers, were arrested in the adjoining county where they resided, after the police learned that they had been seen in the vicinity of the victim's home on the day of the robbery, and that the automobile driven by Roy Marshall that day had been found burned out on the next day. On July 7, a showup was conducted, and a neighbor of the victim identified the Marshall brothers as the men he had seen about three-quarters of a mile from the victim's home six hours before the robbery. Following this identification, the two brothers were formally charged with armed robbery. Shortly thereafter, they retained counsel.

On July 18, the day of the preliminary hearing, the victim was released from the hospital, and he proceeded to the jail where he identified appellants as his assailants after a showup was conducted without notice to and in the absence of the Marshall brothers' counsel.

The Marshalls were tried in Sevier County Circuit Court before a jury in November 1967, convicted of armed robbery, and sentenced to twenty-five years imprisonment. At trial, the neighbor identified them as two of the three men he had seen in the vicinity of the victim's home on the morning of the robbery; and the victim identified them as his assailants.[1] On appeal to the Tennessee Court of Criminal Appeals, their convictions were affirmed, one judge dissenting because constitutionally impermissible identification had been employed at the trial. The majority opinion did not discuss this issue. Thereafter, appellants sought post-conviction relief in the state court, and the petition was denied on February 22, 1971. The denial of the petition was affirmed on appeal on November 10, 1971, and the Tennessee Supreme Court denied their petition for certiorari on September 22, 1972. A month later, appellants filed a petition for a writ of habeas corpus in federal district court.

The district court conducted an evidentiary hearing and concluded, on the basis of that hearing and the records of the state proceedings, that: (1) the first showup, at which the Marshall brothers were identified by the victim's neighbor, did not violate their right to the assistance of counsel because they had not yet been formally charged, Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and did not violate their right to due process of law; (2) the second showup, at which the Marshall brothers were identified by the victim, was unconstitutional because

---

1. The state did not introduce into evidence the victim's identification of appellants after the showup. Had the state done so, we would have been required to reverse appellants' conviction without inquiring whether the victim's in-court identification had a source independent of the illegal showup. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Evidence of the showup did come out during cross-examination, however, when defense counsel sought to challenge the victim's credibility. We do not believe, as the state suggests, that the failure of defense counsel to object to the admission of the victim's in-court identification because he was not aware of the Supreme Court's decision in the just decided case of United States v. Wade, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), nor his eliciting evidence of the showup during cross-examination requires the conclusion that appellants " 'after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate . . . [their] federal claims in the state courts, whether for strategic, tactical or any other reasons that can fairly be described as the deliberate bypassing of state procedures . . . .' " Henry v. Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965), citing Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). We therefore agree with the district court which held, after its evidentiary hearing, that appellants did not waive their federal constitutional claims during the state proceedings.

they had been formally charged, and their retained counsel was given no notice of or opportunity to be present at the confrontation, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967); (3) the state trial court's admission of the victim's in-court identification was constitutional error because it did not make a prior determination that these identifications were not tainted by the showup and were of independent origin; and (4) admission of the in-court identification was not prejudicial because the victim "was very specific in his testimony" at the evidentiary hearing "that his in-court identifications of the petitioners was based upon his observations of them at the scene of the crime; and not upon his observations of them during the show-up (or show-ups)." Accordingly, the failure of the state trial court to conduct the hearing required by the *Wade* case was harmless beyond a reasonable doubt.

On appeal it is contended that the constitutional error complained of was not harmless beyond a reasonable doubt because the in-court identification did not have an origin independent of the showup and because " 'there is a reasonable possibility' " that this identification " 'might have contributed to the conviction.' " [2] Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L. Ed.2d 705 (1967), *citing* Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

Although the danger inherent in eyewitness identification has long been a subject of grave concern,[3] it was not until 1967, a few weeks before the challenged showup in this case, that the Supreme Court, in the *Wade-Gilbert-Stovall* trilogy [4] established standards and procedures for conducting pretrial confrontations between an eyewitness to a crime and the accused. In United States v. Wade, *supra,* the Court held that when a criminal prosecution has been initiated, the accused must be permitted to have counsel present during a pretrial confrontation with an eyewitness to the crime. If a confrontation is conducted in the absence of counsel and without a waiver by the accused, the eyewitness may not make an in-court identification of the accused unless the state can demonstrate by "clear and convincing evidence" that the witness' identification has an origin independent of the pretrial confrontation. *Id.,* 388 U.S. at 240, 87 S.Ct. 1926.

In this case, it is undisputed that the Marshall brothers, although formally charged, were not informed of their right to have counsel present during the showup at which the victim identified them as his assailants, and it is also undisputed that their retained counsel was given no notice of the showup. Accordingly, as the district court held, the showup was unconstitutional, and the victim's in-court identification of appellants should not have been ad-

2. Appellants also contend that the showup was "so unnecessarily suggestive and conducive to irreparable mistaken identification," that they were denied due process of law. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). We need not decide this question because of our present disposition. It appears that even if there were a violation, the state might be permitted to elicit the in-court identification if it could establish by clear and convincing evidence that the in-court identification had an origin independent of the unlawful showup. *E. g.,* United States ex rel. Phipps v. Follette, 428 F.2d 912 (2d Cir. 1970). We wish, however, to note our reservations concerning the propriety of utilizing an independent basis test after a due process viola-

tion is established. *See* United States v. Clark, 499 F.2d 889 (6th Cir. 1974).

3. See N. Sobel, "Eye-Witness Identification: Legal and Practical Problems," vi (1972), Levine and Tapp, The Psychology of Criminal Identification: The Gap from Wade to Kirby, 121 U.Pa.L.Rev. 1079 (1973), and the authorities cited in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

4. United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

mitted unless the state had demonstrated by "clear and convincing evidence" that the in-court identification had an origin independent of the showup. *Id.* at 240, 87 S.Ct. 1926.

Determination of the existence of an independent origin for an in-court identification

> requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any prelineup description and the defendant's actual description, any identification prior to [the] lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. *Id.* at 241, 87 S.Ct. at 1940.

■ In this case, the district court, instead of the trial court as mandated by *Wade,* held an evidentiary hearing at which evidence of these factors was adduced, and appears to have based its conclusion that the victim's in-court identification was not tainted by the illegal showup solely upon the victim's answers in the following colloquy:

Q. Mr. Miller, when you identified these two men at the trial as the ones who robbed you, did you do it on the basis of what you had seen at the jail or what you saw out there at the time of the robbery?

A. I fixed it on the basis at the time they shot me and robbed me.

Q. And not at the time you saw them in jail?

A. No.

Whether the trial judge who was unaware of the requirements of *Wade* would have made the same determination can only be a matter of speculation. And, if he had undertaken this inquiry, he might have developed evidence different from and additional to that considered by the district court. Also, despite the response of the victim to obviously leading questions, the record does not show by "clear and convincing evidence" that the identification had an origin independent of the showup.

In making this determination, we consider the vagaries of eyewitness identification that concerned the Supreme Court in the *Wade-Gilbert-Stovall* trilogy, and we observe that whenever an eyewitness is summoned by the police to make an identification in a pretrial confrontation, it is not unlikely that he believes that the police have apprehended, or, at least, think that they have apprehended, the perpetrator of the crime that he has witnessed. Moreover, a showup in which an eyewitness is asked only to indicate whether "this is the man" is inherently more suggestive and more conducive to misidentification than is a fairly conducted lineup in which the suspect is placed among persons of similar size and description. *Cf.* Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). *See generally,* N. Sobel, "Eye-witness Identification: Legal and Practical Problems" (1972). Accordingly, a lineup is a preferred method of eyewitness identification. *See* Stovall v. Denno, *supra,* 388 U.S. at 302, 87 S. Ct. 1967.

In this case, more than just the suggestibility of the showup employed persuades us that the victim's in-court identification of the Marshall brothers was tainted by it. Considering the factors that the Supreme Court has stated are relevant to the determination whether there is an independent source of an in-court identification, we find that the victim's opportunity to observe his assailants was very limited, that his description of them does not match the actual physical characteristics of appellants in a crucial respect, and that he first identified one brother as the person who shot him and then changed his mind and identified the other brother as that person.

The victim testified that he was shot in the abdomen at the beginning of the robbery. The robbers wore dark masks that covered their faces from the bridges of their noses to their chins, and head coverings of some kind that hid their hair and their ears. The victim states that he could see only their eyes and their "general shape." The eyes of the robber who shot him were "rooster-colored," or brown. One of the robbers was slim and the other, heavy. This description was all the victim was able to give at any of the proceedings.

At the preliminary hearing, the victim testified that Roy Marshall, the older and heavier of the two brothers, had shot him. At trial, he changed his mind and testified that Paul Marshall had shot him. Neither brother has "rooster-colored," brown or hazel eyes. Both have blue eyes. When asked by the district court to explain the discrepancy between his description and the actual physical appearance of Paul Marshall, the victim stated, "Well, I believe his eyes have changed some since then." The district court, apparently troubled by this explanation, then engaged the victim in the following colloquy:

Q. You think they have changed from the fellow that you saw before, is that right?

A. No, that is the same fellow.

Q. What about his eyes, have his eyes changed?

A. They seem like they have.

■ Because of the limited opportunity that the victim had to observe his assailants, his physical condition at the time, the discrepancy in his description of the color of his assailants' eyes, and his misidentification of the person who shot him, we conclude that the victim's in-court identification was tainted by the illegal showup. This conclusion is also supported by other testimony that he gave. At trial, for example, he was unable to describe the clothing worn by his assailants except that it was "very sooty" and "kind of like [the clothing] they got on now." Nor could he remember what kind of head covering his assailants had worn or whether he could see any hair at all. At the preliminary hearing, he stated in response to a question concerning the facial covering that his assailants had worn, "It was kindly dark like a mask." When asked whether it was "A handkerchief or something," he responded, "It looked to me more like it was a cloth of some kind. In other words, them with them two guns on me and everything I thought it might be best not to look too much." When asked about this statement during the hearing conducted by the district court, the victim first denied that he had given that testimony and only admitted that he might have done so after the relevant portion of the preliminary hearing transcript was read to him.

There is only the victim's bare assertion that his in-court identification of the Marshall brothers was independent of the impermissible showup to counter the contradiction in his other testimony. And the Supreme Court has cautioned that the danger of misidentification is "particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest," and that "[t]he impediments to an objective observation are increased when the victim is the witness . . . [because his] understandable outrage may excite vengeful or spiteful motives." United States v. Wade, *supra,* 388 U.S. at 229, 230, 87 S. Ct. at 1933. Accordingly, as Judge McGowan stated, in writing for the District of Columbia Circuit Court of Appeals, sitting *en banc,* "although the positiveness of the witness about an independent base for an in-court identification is a relevant factor, it is to be weighed warily and in the realization that the most assertive witness is not invariably the most reliable one." Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1242 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L. Ed.2d 567 (1969).

After careful examination of the record and consideration of the victim's

age, his physical condition and emotional state at the time of the robbery, the discrepancy between his description of his assailants and the physical appearance of appellants, and his apparent misidentification of Roy Marshall as the person who shot him, we hold that the evidence is not "clear and convincing" that the victim's in-court identification was independent of the illegal showup.[5] If the trial court had conducted the inquiry mandated by *Wade* and had so concluded, the victim would not have been permitted to identify appellants as his assailants. Accordingly, unless the admission of this evidence was "harmless beyond a reasonable doubt," the decision of the district court must be reversed. Chapman v. California, *supra*, 386 U.S. at 24, 87 S.Ct. 824.

██ Only rarely, if ever, can the admission of an in-court identification by the victim of a brutal crime who is also its only eyewitness be considered harmless. In this case, moreover, there are additional factors that militate against a finding of harmlessness. The state's case against appellants rested, as the state virtually conceded before the district court, almost entirely upon eyewitness identification, both by the victim and by his neighbor.[6] Apparently, the state did not recover any of the proceeds of the robbery because it did not introduce into evidence either the money or the firearms stolen from the victim. The neighbor, moreover, was able to testify only that he saw the Marshall brothers along with a third man six hours before the robbery three-quarters

of a mile from the victim's home. Although the neighbor spoke to Roy Marshall in the course of helping him start his disabled vehicle, he saw the other two men only at a distance and was apparently able to identify Paul Marshall only by the color of his hair. Roy Marshall, in his initial statement to the police admitted freely that he had seen the neighbor on the day of the robbery and that this neighbor had helped him with his car—after the neighbor indicated that he was not sure if he had ever seen Roy Marshall before. It was this automobile that was found burned out the day after the robbery. Roy Marshall also explained to the police that he was in the vicinity that day because someone had paid him for a ride there in order to purchase some whiskey. Paul Marshall, according to his fellow employee, was working at a restaurant miles away from the place where the neighbor testified that he saw him at the relevant time. And there was no physical evidence such as fingerprints or footprints to place appellants in the victim's home.

██ Accordingly, it is evident from this summary of the most damaging evidence of appellants' guilt that the admission of the in-court identification by the victim was not harmless beyond a reasonable doubt.

Reversed and remanded with instructions to grant the petition for a writ of habeas corpus unless the state retries appellants within a reasonable time and makes the proper inquiry and finding before admitting the challenged in-court identification.

---

5. United States v. Wade, 388 U.S. at 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149. Cf. Neil v. Biggers, 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), where the Supreme Court, in assessing the reliability of an in-court identification made after a showup, concluded that due process of law had not been violated. It considered that the witness had had an excellent opportunity to observe her unmasked and undisguised assailant for approximately a half-hour, that she had given a detailed description of him to the police shortly thereafter, and that she

had made no previous identification of anyone else in any of the photographic displays, showups, and lineups to which she had been exposed despite their suggestability.

6. When the district court asked counsel for the state whether "the conviction depend-[ed] on identification by this witness," he responded, "Well, of course, that is hard to say. There was some other proof. I would say that was a very strong part of the proof. He was the only eyewitness to the crime."