Terry HOLLAND, Plaintiff-Appellant,

v.

E. P. PERINI, Superintendent of Marion Correctional Institution, Defendant-Appellee.

No. 74–1610.

United States Court of Appeals, Sixth Circuit.

March 17, 1975.

---

Terry Holland, Paul Mancino, Jr., Cleveland, Ohio (Court-appointed), for plaintiff-appellant.

William J. Brown, Atty. Gen. of Ohio, Thomas D. Rooney, Columbus, Ohio, for defendant-appellee.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's denial of Appellant's petition for a writ of habeas corpus, which attacks his state court conviction for armed robbery on several grounds. His primary

argument concerns certain one-on-one confrontations (showups) which the police arranged with three witnesses after his arrest.

Appellant was convicted by a jury on March 25, 1971 on one count of armed robbery. Having been on parole when he committed this offense, Appellant received an indeterminate sentence of from ten to twenty-five years in the Ohio Penitentiary.

His immediate conviction concerned the May 9, 1970 robbery of a McDonald's Restaurant in Cleveland, Ohio. Viewing the evidence in the light most favorable to the Government, we find that Appellant and an accomplice entered the restaurant before its opening, having disguised themselves in loose-fitting stocking masks. At gunpoint they ordered the Manager, his son, and three employees to lie face-down on the floor after binding them with electricians' tape. The robbers took approximately $3500 in cash and escaped out the back door. The pair parted company, Appellant traveling on foot.

Mr. Delbert Mohney, who was parked at a gas station across the street from the McDonald's, observed Appellant fleeing the restaurant, drove his car parallel to the escape route, and observed Appellant (without a stocking mask) walking along the street for approximately 45 seconds at a distance of about eight feet. Mohney then lost sight of Appellant, returned to the gas station, and paid his bill. While at the station he saw Appellant a second time, as he was in police custody in the McDonald's parking lot.

Several police cruisers converged on the restaurant within minutes of the robbery. The officers received a rough description of the two robbers—one tall, the other short, one in a dark blue sport coat and fishing hat. While searching the immediate area, Patrolmen Benik and Dunn observed a blue sport coat hanging on a fence and someone running through a neighboring yard. After firing a warning shot, Dunn arrested Appellant. A gun with five live shells was found several feet from the place of arrest.

The officers returned with Appellant to the McDonald's parking lot. Without asking the McDonald's employees to attempt to identify him, they transferred Appellant to another cruiser, which took him to a stationhouse. There he was booked and held under suspicion of the robbery.

The following morning the Manager (William Borkenhagen) and an employee (Brian Farland) were asked to come to the stationhouse to identify a "suspect." Borkenhagen testified that he was "taken into a room to confront a suspect the officer told us they found in the neighborhood, and they asked us if we could identify him." The confrontation occurred in a small room on an upper floor of the stationhouse. The only persons present were Borkenhagen, Appellant, and two policemen. Borkenhagen identified Appellant as one of the robbers, on the basis of a scar over his right eye which had shown through the loose-fitting stocking mask worn during the robbery. Farland recounted a similar story, except that only one policeman and Appellant were present in the room. Farland recognized Appellant not only by the scar, but also by his voice and size. Farland testified that the stocking had not hidden Appellant's identity since the scar "stood out real well" and the stocking was "like if you take a piece of cloth and lay it over your head, it hung real loose."

Two weeks later, on May 24, Mohney was called to the stationhouse for a similar showup. "I recognized him immediately," stated Mohney.

The trial court overruled motions to exclude the three witnesses' identification testimony, holding that "the State has established beyond any reasonable doubt that [Mohney's] in-court identification is not in any way tainted by any confrontation." After the State produced the stocking used in the robbery, which the trial court described as "a very thin piece of nylon mesh, . . . holding it up to the light even you can

see right through it," the trial court overruled motions to exclude Borkenhagen's and Farland's testimony.

Appellant argues that his conviction was constitutionally invalid because the stationhouse showups were conducted in the absence of defense counsel and because they were impermissibly suggestive. There are two distinct claims presented.

The first is that he was deprived of his Sixth Amendment right to the assistance of counsel during the showups. If he is correct, the trial court should not have admitted testimony concerning the showups. The second claim is that he was deprived of his Fourteenth Amendment right to due process because the showups were "unnecessarily suggestive and conducive to irreparable mistaken identification." Kirby v. Illinois, 406 U.S. 682, 691, 92 S.Ct. 1877, 1883, 32 L.Ed.2d 411 (1972), quoting Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). If he is correct on this ground, the trial court should not have admitted testimony of the participants in the showups concerning Appellant's identity.

■ We turn first to Appellant's Sixth Amendment claim. The rule established in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), is that the Sixth Amendment guarantees the right to counsel at any "critical confrontation" occurring after the initiation of adversary criminal proceedings. If such a confrontation occurs in the absence of defense counsel, unless the right to counsel is waived, the Government may introduce in-court identification testimony of a witness who participated in the improper confrontation only if it can "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." Wade, 388 U.S. at 240, 87 S.Ct. at 1939. The Government may not introduce tes-

timony concerning the improper confrontation itself. If it does so, a conviction may not stand unless it is clear beyond a reasonable doubt that the admission of the testimony was harmless error.

■ It is clear that Appellant did not have the assistance of counsel at either the May 10 showups with Borkenhagen and Farland or the May 24 showup with Mohney. Appellee does not dispute Appellant's contention that he requested the presence of counsel at both times. The showups were clearly "critical confrontations."

The District Court held that counsel was not required at the May 10 showups because "adversary judicial proceedings" had not been initiated against him at the time of the May 10 showups. Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). See also Hastings v. Cardwell, 480 F.2d 1202, 1204 (6th Cir. 1973), cert. denied, 415 U.S. 923, 94 S.Ct. 1425, 39 L.Ed.2d 478 (1974). Appellant was arrested on the morning of May 9, the showups occurred before 10:00 a. m. on May 10, and an affidavit and arrest warrant were filed against him at an unspecified hour of May 10. It appears that the formal filing of charges was withheld until after the robbery victims had identified Appellant as the robber. Appellant personally stated that this was the case in his pro se "Traverse and Brief" filed in the District Court. We accept this as the fact. Arraignment occurred on May 11, and indictment followed on May 25.

We read Kirby as governing this case. Kirby speaks of the time at which Sixth Amendment rights attach as that point where "the government ha[s] committed itself to prosecute." 406 U.S. at 689, 92 S.Ct. at 1882. Here the showups did not occur until almost 24 hours after the initial arrest but before formal charges had been filed. Had Borkenhagen and Farland not been able to identify Appellant, he might well have been released, since the case against him at that point would have been weak. Before formal charges were filed and the machinery of the judicial process was set into motion, Appel-

lant's Sixth Amendment right to counsel had not attached.[1] Accordingly, the absence of counsel at the May 10 showups did not infringe Appellant's Sixth Amendment right to counsel.

The absence of counsel at the May 24 showup with Mohney, on the other hand, falls within the protection of the *Wade-Gilbert* rule. Appellant had been arraigned, and adversary criminal proceedings had begun. Thus, it was constitutional error for the trial court to have admitted testimony concerning Mohney's May 24 stationhouse identification of Appellant.

This conclusion does not mean that Mohney's entire testimony was improperly admitted. His in-court identification of Appellant was proper if the trial court and District Court were correct in concluding that his in-court identification was "based upon observations of the suspect other than the [showup] identification." *Wade,* 388 U.S. at 240, 87 S.Ct. at 1939.

■ We agree with the District Court that Mohney's 45-second observation of Appellant at a distance of eight feet after Appellant had left the McDonald's Restaurant was an independent basis for the in-court identification. Any suggestion that the showup was the sole basis for Mohney's identification of Appellant is refuted by Mohney's testimony that he recognized Appellant immediately at the showup. The sole constitutional error concerning Mohney's testimony, therefore, was the admission of his statements concerning the May 24 showup itself.

■ Before considering whether the introduction of Mohney's testimony concerning the May 24 identification was harmless error, we turn to Appellant's second claim concerning the showups—that his due process rights were infringed by the admission of testimony based

on showups which were "unnecessarily suggestive and conducive to irreparable mistaken identification." Kirby v. Illinois, 406 U.S. at 691, 92 S.Ct. at 1883. Whether due process was violated by the admission of testimony partly based upon a questionable confrontation "depends on the totality of the circumstances surrounding it." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). *See* Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ The District Court held that under the totality of the circumstances surrounding the May 10 and May 24 confrontations, the trial court had correctly concluded that there was no substantial likelihood of misidentification imposed by the use of the showups. We agree. As the District Court stated,

> The police officers conducting the pretrial confrontations made no suggestive statements or comments or movements prior to or during the viewings at the police station. Furthermore, the ample opportunity provided the . . . witnesses to observe the robber at the scene of the crime and to formulate independent recollections of his description and appearance, the short period of time intervening between the crime and the pretrial confrontations, and the positive identifications by each witness from the lasting impressions resulting from their individual independent observations of the robber at the scene of the crime are all persuasive factors for defeating petitioner's claim of "substantial likelihood of misidentification."

The record fully supports these findings, which constitute precisely the elements that refute a due process claim under the Supreme Court's decision in Neil v. Biggers, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).[2] Thus, al-

---

1. We need not decide whether Sixth Amendment rights attach automatically upon the filing of an affidavit under Section 2935.05, Ohio Rev.Code, or whether arraignment is necessary under *Kirby* to trigger the *Wade-Gilbert* rule.

2. "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the

though the showups may have been "unnecessarily suggestive" and although the showups may have been poor substitutes for lineups or other more acceptable confrontations, *Biggers* requires rejection of Appellant's claim. As the *Biggers* Court stated, "[T]he central question [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199, 93 S.Ct. at 382. Borkenhagen's, Farland's, and Mohney's in-court identifications were reliable. The admission of their testimony did not violate due process. *See* Sewell v. Cardwell, 454 F.2d 177 (6th Cir. 1972); Johnson v. Salisbury, 448 F.2d 374 (6th Cir. 1971), cert. denied, 405 U.S. 928, 92 S.Ct. 979, 30 L.Ed.2d 801 (1972); Hancock v. Tollett, 447 F.2d 1323 (6th Cir. 1971).

■ Given the properly admitted identifications of Appellant by Borkenhagen and Farland, the in-court identification by Mohney, and the arresting officers' testimony, it is clear that the District Court was correct in holding that the admission of Mohney's testimony concerning the May 24 showup was harmless error. The situation here parallels that in Schneble v. Florida, where the Supreme Court held,

> Not only is the independent evidence of guilt here overwhelming . . ., but the allegedly inadmissible statements . . . at most tended to corroborate certain details . . .[3]

Here Mohney's testimony concerning the May 24 showup merely corroborated his testimony that he was certain Appellant

was the person he observed at a distance of eight feet for a period of 45 seconds immediately after the robbery. The admission of his testimony concerning the May 24 showup was, therefore, harmless error under Chapman v. California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The writ was properly denied on this ground.

We have examined Appellant's remaining contentions concerning the lack of a speedy trial and the introduction of certain evidence and find them to be without merit for the reasons stated by the District Court.

Accordingly, the Order of the District Court denying Appellant's petition for a writ of habeas corpus is affirmed.

EDWARDS, Circuit Judge (dissenting).

Although I recognize, as do my colleagues in the opinion for the court, that Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), have seriously eroded the thrust of the *Wade, Gilbert, Stovall* trilogy,[1] these cases have not been overruled. I do not see how an identification procedure could be more "unnecessarily suggestive and conducive to irreparable mistaken identification"[2] than the two one-on-one show-ups conducted for witnesses Borkenhagen and Farland. Nor do I believe that erroneous admission of their testimony can appropriately be held to be harmless.

I respectfully dissent.

---

level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199–200, 93 S.Ct. at 382.

**3.** 405 U.S. at 431, 92 S.Ct. at 1059.

**1.** United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v.

California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

**2.** Kirby v. Illinois, *supra* at 691, 92 S.Ct. at 1883.