Robert M. HELTZEL,
Petitioner-Appellant,

v.

Henry E. COWAN, Superintendent,
Kentucky State Penitentiary,
Respondent-Appellee.

No. 74–2316.

United States Court of Appeals,
Sixth Circuit.

July 2, 1975.

J. Vincent Aprile, Public Defender, Frankfort, Ky., for petitioner-appellant.

Ed W. Hancock, Atty. Gen. of Ky., Robert W. Riley, Frankfort, Ky., for respondent-appellee.

Before EDWARDS, CELEBREZZE and MILLER, Circuit Judges.

PER CURIAM.

In this appeal we are asked to reverse the District Court's denial of a writ of habeas corpus. The judgment of the court was entered upon the ground that a one-on-one show-up identification of appellant by a complaining witness while "obviously suggestive," *Stovall* v. *Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), did not constitute abuse of federal constitutional rights under "the totality of circumstances" of the case. *See Neil* v. *Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The "totality of circumstances" known to the courts of Kentucky and to the United States District Court, both of which denied relief to appellant on this issue, included the following:

The crime occurred July 28, 1969, in Russell County, Kentucky at 6:50 a. m. The complaining witness, one Kenneth Grider, was driving to his place of business on a state road four miles from his home. According to Grider's testimony, a car pulled up alongside his pick-up truck and a man whom he recognized as someone he had seen but whose name he did not know thrust a shotgun out the righthand window and shot at him, a portion of the charge striking him in the left shoulder. Grider also testified that the shot was fired at a distance of about three feet, that "he realized he missed me," and that the car swerved into the path of his pick-up truck, slowed down and the same man leaned out of the righthand window and attempted (unsuccessfully) to get off another shot. Grider testified that there was an investigation of the assault but that his assailant was known by another name and was "in and out of Russell County." Apparently Grider did not give the sheriff any detailed description of his assailant.

Three years later Grider was summoned by the Sheriff of Russell County to the county jail and asked to take a look at a man held there on another charge. Grider viewed him through a small window in the cell door and immediately identified the person in the cell as his assailant in the three-year-old shooting. He testified that he then learned Heltzel's name for the first time—although he had previously seen him twice before the shooting took place.

Appellant Heltzel took the stand and denied shooting Grider. He testified

852

that he had been in Russell County, Kentucky for about three months in the fall of 1969 working off and on for a family named Maynard, but had left Russell County for Indianapolis on a Sunday prior to the shooting on Monday. He called three members of the Maynard family as alibi witnesses to his presence in Indianapolis at the time of the shooting.

On cross-examination the last of these witnesses, Jimmy Dale Maynard, testified in part:

6 Do you know Kenneth Grider?

A Yes.

7 Over quite a period of time?

A Yes.

8 How far did Kenneth live from Charlie at that time?

A About 2 miles.

9 Was there any trouble then between the Maynards and Griders?

BY MR. BURTRAM: OBJECTION

BY THE COURT: OVERRULED

BY MR. BURTRAM: EXCEPTION

-- Was there trouble between the Griders and the Maynards back in 1969?

A Yes.

10 I'll ask if your brother wasn't tried for killing a Grider?

BY MR. BURTRAM: OBJECTION

BY THE COURT: OVERRULED

BY MR. BURTRAM: EXCEPTION

— Isn't that correct? Your brother was tried for killing a Grider?

A Yes.

11 Isn't it a fact this trouble is the reason Kenneth was shot?

A No.

On these facts the Court of Appeals of Kentucky affirmed appellant's conviction.

In the instant habeas proceeding, United States District Judge Bratcher reviewed the state court trial record and held:

We have examined the transcript of the victim's testimony offered at trial and conclude that there is merit to the

respondent's position. The confrontation was obviously suggestive. The victim was shown only one individual, the individual whom he was told was in the jail, and the one who had perpetrated the crime against him. If there were nothing more, any subsequent identification of the petitioner by the victim would have been vitiated. There is more, however. The victim testified that he was able to see and got a good look at the person who fired the shot. (T.P. 6); that the individual was sitting upright within three feet of him when he fired the shot; that after the car pulled ahead of him the individual stuck his head out of the car and he saw him again (T.P. 10); that he had seen the petitioner on two occasions prior to the shooting; and that after the incident occurred he was trying to find out where this individual was but was unable to do so because petitioner was known by another name. In other words, he knew by sight the individual who did the shooting, but not by name. He was unable to locate him because he did not know his name (T.P. 13). We conclude that these additional circumstances make the likelihood of a misidentification insubstantial and that his in-court identification was based upon prior observations of the petitioner, not upon the observation of him at the one-to-one confrontation. See *United States* v. *Casscles*, 489 F.2d 20 (2nd Cir. 1973).

The Kentucky jury which tried appellant had testimony before it from which it could have concluded that the victim knew his assailant at least by sight prior to the crime and had ample opportunity to see and recognize him in broad daylight at the time of the shooting. While appellant denied all complicity, the credibility of the witnesses was a jury issue.

Prior to the decision of *Neil* v. *Biggers, supra*, the suggestiveness of the one-on-one jail identification which was testified to at trial might have been viewed as a per se due process abuse.

The *Biggers* case dealt with the identification of a stranger in the course of a crime committed under cover of darkness. Our instant appeal concerns an assailant previously known to the victim and a shooting at close range in broad daylight. We believe *Biggers* is directly applicable to this case.

Finally, we note that the record would allow an inference that the victim, Grider, may have been something less than fully cooperative with law enforcement in the investigation of this crime. This issue, however, also pertains to the weight and credibility of the evidence and was a jury question.

The District Judge's findings and conclusion are supported by the record under the controlling standard of the *Biggers* case.

The judgment of the District Court is affirmed.