Walter **WEBB, Jr.,** Plaintiff-Appellant,

v.

Joseph H. **HAVENER,** Superintendent of Southern Correctional Facility, Defendant-Appellee.

No. 75-2374.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1976.

Decided Feb. 18, 1977.

As Modified April 14, 1977.

**1082**

Walter Webb, Jr., pro se.

Albert S. Rakas, Dana F. Castle, Margery B. Koosed, Akron, Ohio, for plaintiff-appellant.

William Brown, Atty. Gen. of Ohio, Simon B. Karas, Columbus, Ohio, for defendant-appellee.

Before CELEBREZZE, McCREE and ENGEL, Circuit Judges.

McCREE, Circuit Judge.

This appeal from the dismissal of a petition for a writ of habeas corpus requires us to determine whether the admission of out-of-court identification of appellant violated his constitutional right to a fair trial.

Appellant attacks his state conviction of armed robbery on two constitutional grounds. First he contends that the out-of-court identification that two witnesses made of him was made under such suggestive circumstances that its admission into evidence denied him due process of law. He also argues that a gun was illegally seized in a warrantless search and that its admission was a violation of his Fourth Amendment rights. Because we hold that evidence of the challenged identifications should not have been admitted at trial, we need not consider appellant's Fourth Amendment claims.[1]

The evidence offered at trial reveals that in the early morning of August 16, 1973, a black man and a white woman in a light blue Chevrolet automobile stopped for gasoline at a station owned by Howard Baker in Cuyahoga Falls, Ohio. The man went into the station, purchased a cup of coffee from the vending machine, exchanged a few words with Mr. Baker, returned to the car and drove off. About one-half hour later two black men approached Baker, who was then servicing a customer's car outside the station, and asked him where the restroom was. A few moments later, after Baker had gone inside, they reappeared and Baker met them in the doorway. Baker was forced back into the station at gunpoint and ordered to give over the money he had in his pockets. Then both Baker and Franklin Harry Leach, a customer who was in the station at the time, were forced to lie down in the back room. While they were still lying down the robbers left.

When the police arrived, Baker and Leach provided descriptions of their assail-

---

1. Review by this court of the legality of this seizure and the permissibility of the introduction of irrelevant and highly prejudicial evidence obtained thereby is complicated by the recent decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). We therefore express no views about this issue, which may not arise again in the event of retrial.

ants in general terms. One man was described as about five feet eight inches to six feet tall, 180 to 200 pounds, with a squint in his left eye. The second man was described as about six feet tall, over 200 pounds, with long sideburns. Baker also mentioned the earlier visit to his station by the couple in the blue Chevrolet. Nevertheless, in his testimony, Baker stated that the man in the Chevrolet was not one of his assailants.

Early the next morning, Officer Goodwell, who was on general traffic duty, saw a blue Chevrolet of the general description mentioned by Baker. He stopped the vehicle and discovered that its temporary registration had expired. He thereupon took its occupants, James Lenzy, Richard Bentley, and Wanda Burt, to the police station.

Although the testimony about what happened at the police station is incomplete, and in some details contradictory, it reveals that Baker and Leach were asked to come to the station to try to identify Lenzy and Bentley as the men involved in the robbery the day before. Bentley agreed to participate in a show up, but neither Baker nor Leach identified him. Lenzy refused to participate in a show up, but was seen and recognized by Baker and Leach together as he was attempting to use a telephone.

Meanwhile, Wanda Burt had told police officers that the Canton police were looking for appellant, and that he and Cindy Johnson, his co-defendant at trial, could be found at a nearby motel.[2] After confirming that a warrant had issued in Canton for appellant's arrest, Akron police officers went to the motel to execute the warrant. Baker and Leach were asked to remain at the station while the police went to bring in another suspect.

Appellant and Johnson were in bed at the motel when the police arrived. Appellant was arrested and then both were taken to the police station. After arrival, appellant,

still handcuffed, was escorted by police officers into a room where Baker and Leach were waiting. They identified him.

The Supreme Court has on many occasions disapproved of police practices that involve unnecessarily suggestive identifications. In *Wade v. Gilbert,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Court, recognizing that "the annals of criminal law are rife with instances of mistaken identification," held that by recognizing the right of an arrested suspect to the assistance of counsel when he is compelled to participate in a lineup, this danger would be minimized. The Court established a clear rule that evidence of lineup identification of suspects who did not have the benefit of counsel at the lineup was inadmissible even without a showing of improper action by the police that created any likelihood of misidentification. However, even though the admission of improper out-of-court identification was forbidden, the Court held that an *in-court* identification by the same witness could be made if a basis for the identification independent of the improper lineup could be established.[3] This approach is consistent with the doctrine that permits the admission of evidence different from but related to other evidence obtained by constitutionally impermissible means to be admitted if its proponent can show that it is not "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), a case argued and decided with *Wade,* although the Court held that the exclusionary rule announced in *Wade* should not be applied retroactively, nevertheless, it stated that a pre-*Wade* identification made during a one-on-one confrontation may be so unnecessarily suggestive and conducive to irreparable mis-

---

2. Wanda Burt was not available to testify at trial. We do not know, therefore, exactly what information she gave about Webb. It appears that Webb had left Canton during a trial involving an unrelated crime.

3. This distinction between pretrial and in-court identification was explicated in *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), when Justice Brennan wrote that an in-court identification could be based upon observations at the time of the crime and not at all induced by the conduct of the lineup.

taken identification that its use at trial would amount to a denial of due process of law. Relying on the right to due process, instead of the right to counsel, the Court in its brief opinion did not elaborate upon the factors that would require a decision that due process had been denied. It recognized, however, that necessity can be a factor in determining identification procedures that may be used by the police. On the particular facts of *Stovall*, where the identifying witness was in grave condition in a hospital and there was no practical opportunity to employ a less suggestive method of identification than the one-on-one hospital room confrontation, the Court found no violation of due process.[4]

The Court again expressed its concern about mistaken identification in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In that case, the defendant challenged in-court identification made by witnesses who had previously identified the defendant during claimed unnecessarily suggestive photographic displays. The Court held that each case involving "convictions based on eyewitness identification at trial following a pretrial identification by photograph" must be considered on its own facts, and that such convictions will be set aside "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971. In *Simmons*, as in *Wade* and *Coleman*, the Court recognized that, despite an intervening impermissible identification, an eyewitness may retain a clear image of his assailant based upon observations at the time of the crime. This image may be so strong that in-court identification can be considered "independent" of, and not the product of, the impermissible procedure. This independent basis must be determined on the facts of each case.[5]

In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court considered a habeas corpus challenge to a state conviction which occurred before the *Wade* and *Stovall* decisions. It was based in part on evidence introduced at trial of a stationhouse identification by the victim. The Court stressed that in such cases the "primary evil" to be avoided was the "substantial likelihood" of misidentification. 409 U.S. at 198, 93 S.Ct. at 375. The Court indicated that the evidence of that out-of-court identification need not have been excluded simply because "the police did not exhaust all possibilities in seeking persons physically comparable" to the defendant. It expressly refused to apply in that case "a strict rule barring evidence of unnecessarily suggestive confrontations" because the purpose of such a rule, "to deter the police from using a less reliable procedure where a more reliable one may be available" could not be served by its application in a case in which "both the confrontation and the trial preceded Stovall . . . when [the Court] first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury." 409 U.S. at 199, 93 S.Ct. at 382.

There has been considerable debate whether *Biggers* should be read as rejecting

---

4. The Court applied *Stovall* in *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 1129, 22 L.Ed.2d 402 (1968), when it held that repeated confrontations between the witness and the defendant were so arranged by the police "as to make the resulting identification virtually inevitable."

5. We have adopted the *Simmons* independent basis rationale both when the flaw in the prior identification lies in the failure to have provided an opportunity for counsel, see, *e.g.*, *Holland v. Perini*, 512 F.2d 99, 6 Cir., *cert. denied*, 423 U.S. 934, 96 S.Ct. 291, 46 L.Ed.2d 266 (1975); *Marshall v. Rose*, 499 F.2d 1163 (6 Cir. 1974);

and when the flaw was arguably impermissible suggestiveness, see, *e.g.*, *United States v. Russell*, 532 F.2d 1063 (6 Cir. 1976); *United States v. Scott*, 518 F.2d 261 (6 Cir. 1975); *United States v. Matlock*, 491 F.2d 504, 6 Cir., *cert. denied*, 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974); *United States v. Clark*, 499 F.2d 889 (6 Cir. 1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975); *Mock v. Rose*, 472 F.2d 619 (6 Cir. 1972), *cert. denied*, 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693 (1973); *United States v. DeBose*, 433 F.2d 916 (6 Cir. 1970), *cert. denied*, 401 U.S. 920, 91 S.Ct. 906, 27 L.Ed.2d 823 (1971).

a strict rule that would emphasize control of police behavior in favor of a rule, to be applied not only in pre-*Stovall* but also in post-*Stovall* cases, that would require an examination of each case limited to the possibility of misidentification. The Second Circuit, in *Brathwaite v. Manson,* 527 F.2d 363, 371 (1975) (Friendly, J.), *cert. granted,* 425 U.S. 957, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976), indicated that it views *Biggers* as only affecting pre-*Stovall* cases, and that a "stringent" rule excluding all "evidence of an identification unnecessarily obtained by impermissibly suggestive means" is necessary to "give fair assurance against the awful risks of misidentification."[5a] The Seventh Circuit, however, in *United States ex rel. Kirby v. Sturges,* 510 F.2d 397 (7th Cir.), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975), refused to adopt such a rule and questioned the power of the federal courts to impose on the states rules whose "entire impact" would be to deter undesirable police conduct.[6]

This court has not been asked to commit itself to such a strict rule. We observe, however, that even in cases in which we focused on the question of the reliability of the identification, we also examined the practical alternatives available to the police at the time they chose to conduct the identification procedure, see, *e.g., United States v. Clark,* 499 F.2d 889, (6 Cir. 1974), *cert. denied,* 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975); *United States v. Matlock,* 491 F.2d 504, (6 Cir.), *cert. denied,* 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974); *Mock v. Rose,* 472 F.2d 619 (6 Cir. 1972), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693 (1973); and the degree to which the confrontation could be considered inevitable or accidental, see, *e.g., United States v. Scott,* 518 F.2d 261 (6 Cir. 1975).

Our decision in this case, however, does not require us to adopt such a rule.[7] The state does not argue that the station-house

---

**5a.** A "strict" rule would, in effect, make the degree to which an identification was *unnecessarily* suggestive a controlling, rather than an additional, factor in determining whether there was a denial of due process. Such a rule would reduce the number of cases in which there is a possibility of mistaken identification testimony by deterring police from using unnecessarily suggestive procedures. Testimony of possibly mistaken identification, unlike evidence that is excluded only because it was obtained in violation of Fourth Amendment rights, is inherently unreliable. Cf. *Schneckloth v. Bustamonte,* 412 U.S. 218, 258, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring); Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 160 (1970).

**6.** Panels in the Fourth Circuit, the only other circuit which has specifically addressed this question, have not agreed about the desirability of such a rule, or about the effect of *Biggers.* Compare *Smith v. Coiner,* 473 F.2d 877, *cert. denied,* 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 743 (1973), with *Stanley v. Cox,* 486 F.2d 48 (4 Cir.) cert. denied, 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1973). See also *United States ex rel. Pierce v. Cannon,* 508 F.2d 197 (7 Cir. 1974).

**7.** The district court, in denying appellant's petition for a writ of habeas corpus, relied on the factual similarities between this case and *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32

L.Ed.2d 411 (1972). The Supreme Court opinion in that case held that a person subjected to a one-man station-house show up conducted before formal charges had been filed was not entitled to counsel under the doctrine established in *Wade, supra.* Although there are similarities between *Kirby* and this case, there are important differences. Kirby was not brought to the station to be identified, and the situation resulting in the confrontation may not have been planned. In this case, although appellant was arrested on other charges, it appears that his arrest was precipitated by the suspicion that he was involved in the robbery. Baker and Leach were told to wait while he was brought in. There is testimony that some of the officers debated whether to subject appellant to the show up or whether instead to arrange a lineup, and that Webb himself requested one. There was nothing fortuitous about the arrest or the confrontation questioned here.

But more importantly, in *Kirby,* the Supreme Court limited its consideration to the question of the Sixth Amendment rights of the defendant. It expressly refused to consider whether the show up, and the later admission into evidence of the resulting identification, deprived Kirby of the due process of law. 406 U.S. at 690 n. 8, 92 S.Ct. 1877. This question was considered in a later habeas corpus action in which the Seventh Circuit denied relief. See *United States ex rel. Kirby v. Sturges, supra.*

show up was not unnecessarily suggestive. Instead it argues that we should limit our consideration to determining whether the station-house identification of Webb was reliable. Respondent contends that even if this evidence was obtained by impermissibly suggestive means, it was in fact reliable. We do not agree.

■ As we observed in *United States v. Russell,* 532 F.2d 1063, 1067 (6 Cir. 1976), the Court in *Biggers, supra,* outlined the factors to be considered in determining the probability of misidentification when the identification procedure has been unnecessarily suggestive:

(1.) The opportunity of the witness to view the criminal at the time of the crime,

(2.) the witness' degree of attention,

(3.) the accuracy of the witness' prior description of the criminal,

(4.) the level of certainty demonstrated by the witness at the confrontation, and

(5.) the length of time between the crime and the confrontation.

Taking all these factors into account, we hold that the probability of misidentification during the station-house confrontation is great.

We have in the past noted that there is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation. This is especially true when the observations were made at a time of great stress and excitement, see *United States v. Russell, supra,* and when the stranger is of a different race. The witnesses in this case, by their own testimony, could not have viewed the robbers for more than "a couple of minutes." For much of that time the witnesses were on the floor, and for all but a few seconds were at gunpoint. Although Baker testified that, after having advised his employees to do so, he took special care in observing the robbers in order to be able to identify them, he was not able to describe them in any detail. If, as was assumed at trial, the shorter man with a squint in his left eye was not appellant, then apparently it was the state's theory that appellant must have been the other robber. The only information given about the second robber is that he was approximately six feet tall, weighed over 200 pounds, and had long sideburns. Although appellant is of this approximate height and weight, by the uncontroverted testimony, at the time of his arrest on the day after the robbery, he had a mustache and not long sideburns.

There are also several other unexplained discrepancies in the testimony given by the witnesses. First, at the suppression hearing, Leach testified that he had identified only one suspect, Lenzy, at the station on the morning after the robbery. The next day at trial, however, he testified that he had identified both Lenzy and appellant. Second, although Leach testified that he and Baker were first shown Lenzy, and then later shown appellant, Baker testified that he identified Lenzy only after he had identified Webb. Third, Baker testified that it was Lenzy who had held the gun to his face while Webb pushed Leach to the floor and kicked him. But Leach testified that it was Lenzy who had kicked him.

■ Although the role of the federal courts considering petitions for habeas is not to resolve conflicts in the evidence presented at trial, in this case the identification testimony was the only evidence connecting Webb with the armed robbery. This identification was made under circumstances so suggestive that its reliability is seriously impaired even without discrepancies. By asking the witnesses to wait at the station while the officers left to bring in another suspect, the police unavoidably suggested to the witnesses that Webb, the man with whom the officers returned, was the man whom they should identify. There was no necessitous circumstance here, as there was in *Stovall,* that justified a hurried confrontation. No explanation was offered why a lineup was not arranged, and why the witnesses were not separated at the time each made his identification. We conclude, therefore, that, because the station-house identification was unreliable and be-

cause it was unnecessarily so, its admission at trial denied Webb the due process of law. See *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1968); *United States v. Russell, supra* ; *Workman v. Cardwell,* 471 F.2d 909 (6th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2748, 37 L.Ed.2d 161 (1972).

The testimony does not reveal that an independent basis existed for the in-court identification made after the constitutionally inadmissible evidence of the stationhouse confrontation had been introduced. Accordingly, we cannot dismiss the error as harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The decision of the district court is reversed and the case is remanded with instructions to grant the writ of habeas corpus unless within a reasonable time petitioner is retried without the use of unconstitutionally obtained evidence.

ENGEL, Circuit Judge, concurring.

The observations of Judge Celebrezze in his dissent have considerable persuasive force when the facts here are compared with those which yielded a different result in *Hastings v. Cardwell, Holland v. Perini,* and *Heltzel v. Collins,* cited in the dissent. On the other hand, the factual context of *United States v. Russell, supra,* tends by comparison to support the result which we reach in the instant case. As we continue to measure an ever growing variety of factual circumstances against the basic principles of *Stovall v. Denno* and subsequent decisions, we will run into the dilemma which Dean Griswold discussed in the 1974 Roscoe Pound Lectures with respect to search and seizure cases:

> In dealing with search and seizure cases, the Court is in fact confronted with a massive dilemma. On the one hand, the cases are fundamental and of great public importance. In some ways they go to the heart of our system of justice, and it is comforting to think that the Supreme Court is ultimately available to deal with questions of this sort. But, on the other hand, the number of cases is great, and is increasing. And each of these cases is a world in itself. Any case in the search and seizure area will be different from every other case. There is only limited precedential value in the decisions, and experience shows that language used in one case in the search and seizure field often has to be qualified or explained away when a different case arises with slightly different facts. The result is an inherent amount of uncertainty, and this uncertainty extends to the lower courts, which have to try to apply the decisions of the Supreme Court.
>
> Erwin N. Griswold: "Search & Seizure—A Dilemma of the Supreme Court", delivered at the University of Nebraska College of Law; March 18–19, 1974.

My primary reason for concurrence is that an examination of the record in the state court shows that the one-on-one identification of appellant was totally suggestive. Webb was under arrest. The witnesses were in effect told whom they were to expect and were then shown the suspect. It is difficult to find a more suggestive procedure than that employed in this case. There is also no credible finding by the state trial court, which I might otherwise be obliged to honor, that the identification by the witnesses had an independent and untainted basis.

Accordingly, I concur in Judge McCree's decision. At the same time, because we need not rely on it here, I would refrain from any expression of preference for the "strict" rule over the approach expressed by the Seventh Circuit in *United States ex rel Kirby v. Sturges,* 510 F.2d 397 (7th Cir. 1975).

CELEBREZZE, Circuit Judge, dissenting.

I respectfully dissent. I cannot reconcile the majority view with our prior decisions which have sustained the constitutionality of post-*Stovall,* one-on-one identifications procured under circumstances no more inherently suggestive than those of the show up employed here. *Hastings v. Caldwell,*

480 F.2d 1202, 1203 (6th Cir. 1973); *Holland v. Perini,* 512 F.2d 99, 103–104 (6th Cir. 1975); *Heltzel v. Cowan,* 518 F.2d 851, 852–853 (6th Cir. 1975). In each of these cases we tacitly declined to impose upon the states a per se rule which would exclude evidence of any suggestive, out-of-court identification not justified by exigent circumstances.

Although the majority appears to favor a strict exclusionary rule turning upon the extent to which resort to impermissible identification procedures was compelled by necessity, it honors these precedents by continuing to adhere to the standard of review suggested in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). However, in applying *Biggers'* five criteria to "the totality of the circumstances" of the instant case, I disagree with the conclusion reached by the majority. The identifications were not so tainted by the apparent suggestiveness of the custodial environment or the statements made by the police as to invoke a palpable likelihood of misidentification. Independent indicia of reliability present here are no less persuasive than they were in the prior cases where we found no denial of due process.

The majority fails to expose any clear error in the factual finding made by the District Court that "there is nothing to indicate that either witness was subjected to or responded to official suggestions in the pre-trial identification." In the absence of that, I see no basis for our substitution of judgment. I would therefore affirm the denial of the writ of habeas corpus.