James MOCK, Petitioner,

v.

Jimmie ROSE, Warden, Tennessee State Prison, Nashville, Tennessee, Respondent.

Civ. A. No. 2803.

United States District Court, E. D. Tennessee, Northeastern Division.

Nov. 18, 1971.

James Mock, pro se.

R. Jackson Rose, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION

NEESE, District Judge.

The respondent undertakes to show cause why the federal writ of habeas corpus should not be awarded herein. He has filed as exhibits herein the records of the trial of the case of State of Tennessee v. James Mock, case no. 8584 in the Criminal Court of Washington County, Tennessee.

■ The first constitutional issue raised by Mr. Mock is that he was deprived of his right under the federal Constitution, Fourteenth Amendment, to the equal protection of the laws, in that members of his (Negro) race were systematically excluded from the grand jury which indicted him and the petit jury which tried him. Eubanks v. Louisiana (1958), 356 U.S. 584, 585, 78 S.Ct. 970, 2 L.Ed.2d 991, 993 (headnote 1). The state trial judge conducted a pretrial hearing on this issue and found thereafter that there had been no showing by the petitioner of any discrimination, " * * * any attempt—or effort, or even neglect, to have colored people [sic: Negroes] in the jury box to serve on the juries * * * " of Washington County, Tennessee. This determination after a hearing on the merits of the factual issue to which the applicant for the federal writ of habeas corpus and the state of Tennessee were parties, evidenced by the reliable and adequate written indicia of the transcript of such pretrial proceedings are presumed to be correct, none of the exceptions mentioned in 28 U.S.C. § 2254(d)(1)–(8), being claimed by the petitioner.

This factual determination is fairly supported by the record of such pretrial proceedings. *Idem.* The evidence adduced thereupon reflected that only about 3½% of the population of Washington County, Tennessee, at the pertinent times, was Black, and that Black men and women had served on both the grand and petit juries in that county prior to the petitioner's trial.

■ The second federal constitutional question presented by the petitioner is his claim that testimony of his alleged victim was used to identify him after she had identified him earlier at the police station before trial in the absence of his counsel. See and *cf.* United States v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The evidence reflects that this was a "chance confrontation" between the petitioner and his victim. The petitioner had been arrested on a charge of "investigation for robbery" and was in custody of the police. In the meantime, the victim, whose husband was a policeman, had come to the police station. As the police detectives were transferring the petitioner from a detention cell to the detectives' office for interrogation, the victim saw the petitioner and cried out: "That's him; that's him". The petitioner was immediately removed from such victim's presence and returned to the detention cell.

■ This evidently-accidental confrontation did not violate the petitioner's right under the Constitution, Fifth Amendment, against compulsory self-incrimination. The evidence shows that the petitioner did nothing; indeed, he testified that he did not even see his victim on this occasion. He was required to do nothing by the state authorities. " * * * [S]ince at least as long ago as 1807, when Chief Justice Marshall first gave attention to the matter [of the ultimate reach of the Fifth Amendment against compulsory self-incrimination] in the trial of Aaron Burr, all have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion. * * * " Hoffa v. United States (1966), 385 U.S. 293, 303–304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374, 383 [8]. " * * * [T]he Fifth Amendment relates only to acts on the part of the person to whom the privilege applies * * * ". Schmerber v. California (1966), 384 U.S. 757, 761, 86 S. Ct. 1826, 1830, 16 L.Ed.2d 908, 914, n. 5 [3]. Even if the state officers had compelled the petitioner merely to exhibit his person for observation by a prosecution witness prior to trial, this would have involved no compulsion of the accused to give evidence having testimonial significance. See United States v. Wade, *supra*, 388 U.S. at 222, 87 S.Ct. 1926, 18 L.Ed.2d at 1154 [3].

The victim had previously given officers a description of the person who robbed her, which fit generally the description of the petitioner. She testified on the trial that she had struggled

with the petitioner for several minutes over the bag of money which was taken from her in the robbery and had an excellent opportunity to observe her assailant. Under the totality of the circumstances shown by the evidence on such trial, there was no violation of the petitioner's federal constitutional rights against self-incrimination and to the assistance of counsel in the unfortunate confrontation of the applicant and his victim.

This Court concludes from all the foregoing that the applicant should be denied all relief. Rule 58, Federal Rules of Civil Procedure. Should the applicant give timely notice of an appeal from this decision, he is authorized to proceed on appeal in forma pauperis. Rule 24(a), Federal Rules of Appellate Procedure. Such notice, if given, will be treated also as an application for a certificate of probable cause, which, then, hereby is granted. Rule 22(b), Federal Rules of Appellate Procedure.