James N. MOCK, Jr., Petitioner-Appellant,

v.

Jim ROSE, Warden, Tennessee State Penitentiary, Respondent-Appellee.

No. 71–1990.

United States Court of Appeals, Sixth Circuit.

Dec. 8, 1972.

Certiorari Denied May 7, 1973.
See 93 S.Ct. 2165.

Ronald A. Lipez, Cincinnati, Ohio, Sidney C. Lieberman, Cincinnati, Ohio (Court Appointed—CJA), on brief, for appellant.

R. Jackson Rose, Asst. Atty. Gen., Nashville, Tenn., David M. Pack, Atty. Gen., Nashville, Tenn., of counsel, for appellee.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

James N. Mock, Jr., petitioner-appellant, appeals from the order of the United States District Court for the Eastern District of Tennessee, Northeastern Division, 352 F.Supp. 554, denying his petition for a writ of habeas corpus. The petitioner was tried before a jury in the Criminal Court of Washington County, Tennessee in the January Term of 1969 and convicted of the offense of simple robbery of a Mrs. Helen Robinson. He was sentenced to a term of not less than five nor more than eight years in the State Penitentiary. He is now confined in, the Penitentiary under this sentence.

The petitioner claims that (1) He was deprived of a fair trial and equal protection of the law because Negroes were systematically excluded from the Grand Jury which indicted him and from the petit jury which tried him, (2) His identification by Mrs. Robinson at an accidental one man showup was impermissively suggestive and deprived him of his constitutional rights and (3) He was not fully apprised of his Miranda rights.

After verdict of guilty by the jury and sentence by the trial judge, the petitioner's motion for new trial was denied; on appeal to the Court of Criminal Appeals of Tennessee, the conviction was affirmed (James Mock v. State of Tennessee) and cert. was denied by the Supreme Court of Tennessee (James Mock v. State of Tennessee). In all of these proceedings the questions of systematic exclusion of Negroes from the jury lists and improper identification of the petitioner were considered. The petitioner has thus exhausted his state court remedies on these issues and the District Court had jurisdiction. The district judge denied the petition for a writ of habeas corpus on the record without an evidentiary hearing. The district judge had before him, as do we, the record in the trial court including a complete transcript of the trial, the opinion of the Court of Appeals and the order of the Supreme Court denying certiorari.

Trial counsel for the petitioner filed a plea in abatement which was heard by the trial judge preliminarily to the trial in a hearing that consumed thirty-three pages of trial transcript. It developed in this hearing that not only was there no systematic exclusion of Negroes on the jury lists but there had been at times as many as two, three and even four Negroes, both men and women, seated on juries.

There is a low percentage of Negroes to the total population in Washington County, only about three and one half percent. Although the jury commissioners did not aim to get a proportionate number of Negroes to Caucasians on their jury lists they did make a definite effort to include Negroes and did succeed in getting a representative number of names of Negroes in the jury box. The name cards that went into the jury box carried no designation to identify the subject as either Negro or Caucasian.

■ The Court of Appeals, in a comprehensive opinion in which it carefully reviewed the evidence and gave careful consideration to the legal questions, said,

"The trial court conducted a full and complete hearing on the plea in abatement. The defendant introduced the testimony of witnesses in an effort to establish a prima facie case in support of his plea. He wholly failed to carry the burden resting upon him to support his plea by the evidence. His evidence clearly showed there was no systematic exclusion of members of the negro race in the selection of the Grand and petit juries who acted on this case."

We agree.

The petitioner claims that the in-court identification of him by Mrs. Robinson, the victim of the robbery, was tainted by a one man showup prior to the trial. Mrs. Robinson's husband, a police officer who had nothing to do with the investigation of this case, told her that the police had arrested someone in connection with her robbery and for her to go to police headquarters. Mrs. Robinson was sitting in a room at headquarters at a time when Captain Tipton was taking the petitioner from his cell to the detective officer for questioning. Captain Tipton testified,

"As Mr. Mock and I came out of the detainer cell and down the hallway to the door, at the time we came through, the lady began hollering, 'that's him, that's him', and I turned him around and took him back to the cell. There were no other colored men there that I recall."

Mrs. Robinson had not talked to the officers and they did not know she was there. The officers were not bringing the suspect out for a possible exposure for identification. The view of Mrs. Robinson was entirely accidental.

Mrs. Robinson had struggled with the robber for about five minutes before giving up the money bag to him and had a good opportunity to see him and fix his identity in her mind. This confrontation is not controlled by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. In Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 the Court said,

"(A) claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *"

See also, Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, 1284; Jackson v. United States, 134 U.S.App. D.C. 18, 412 F.2d 149, 154; United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (C.A.2).

In Bates v. United States, 132 U.S. App.D.C. 36, 405 F.2d 1104 at page 1106 the Court said,

"There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."

■ Here, the petitioner was not brought into view of Mrs. Robinson for a possible identification. The confrontation was accidental and unplanned and the identification of the victim of the robbery spontaneous. There was no suggestion of any kind, actual or implied, made by the police to Mrs. Robinson that the petitioner was arrested as a suspect.

We conclude that under the totality of the circumstances of this case there was no prejudice to the petitioner by the pretrial identification of him by Mrs. Robinson.

■ The petitioner claims that there is no evidence that Captain Tipton, in giving the "Miranda" warnings, told him that he need not answer any questions and that if he did answer questions he could stop the questioning at any time. This question is raised for the first time in this Court but since the evidence before us is determinative of

the alleged claim we consider it to avoid a repetition of these proceedings.

Captain Tipton testified that he

"advised him that he did not have to make any statement; that any statement he made could and would be used against him in a Court of law; that he was entitled to an attorney; if he was unable to afford one, one would be appointed for him; and that he was entitled to a telephone call."

In Miranda v. Arizona, 384 U.S. 436 at 479, 86 S.Ct. 1602 at 1630, 16 L.Ed.2d 694 the Court said,

"(T)o assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a Court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

At pages 475–476, 86 S.Ct. at page 1628 the Court said,

"Moreover, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated."

This statement involves waiver of the privilege to remain silent, not a required warning. While an individual is not deemed to have waived his privilege to remain silent if he answers some questions and then chooses to stop talking or answering questions, no such warning is required by the Court in the warnings specified at page 479, 86 S.Ct. at page 1628, above quoted.

We find no merit to petitioner's claim that he was not given adequate "Miranda" warnings.

Affirmed.