James Henry NORRIS, Appellant,

v.

A. E. SLAYTON, Jr., etc., Appellee.

No. 72–1428.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1974.

Remanded Dec. 24, 1974.

Decided Sept. 16, 1976.

H. Lane Kneedler, Charlottesville, Va.
[Court-appointed counsel], for appellant.

Gilbert W. Haith, Asst. Atty. Gen., Richmond, Va. (Andrew P. Miller, Atty. Gen., Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

James Henry Norris, a prisoner of the State of Virginia under a conviction for the crime of rape, filed a petition in the district court for habeas corpus relief. Primarily Norris charged that his pretrial confrontation with the complaining witness was so impermissibly suggestive and conducive to mistaken identification that her in-court identification of him should not have been allowed, and that he was denied due process of law by the failure of the state to disclose exculpatory evidence material to his defense. Acting upon the pleadings and the record of petitioner's trial in the state court, the district judge denied the petition and Norris appealed. Following oral argument, we entered an order remanding this case to the district court with directions that it supplement the record by an evidentiary hearing and findings based upon the evidence presented to it. The report of the district court, together with the evidence taken pursuant to the order of remand, has been filed and the appeal is now before us for final disposition.

The crime for which Norris was convicted allegedly occurred at approximately 4:00 a.m. to 5:00 a.m. on June 8, 1969. Mrs. Rosalie McDaniels, who was eighty-one years old at the time, testified that shortly after 4:00 a.m. a black man assaulted her while she was in bed in her home, holding her there for nearly an hour and raping her twice. Mrs. McDaniels testified that she could see her assailant by the light of the dawn coming through the window of her room. The assailant left at about 5:00 a.m.

Shortly after 5:00 a.m. Norris was observed breaking into the residence of Mr. and Mrs. Cole which was some 300 yards from the home of Mrs. McDaniels.[1] At approximately 5:30 a. m. Police Officer Leake observed Norris on the road between the Cole and McDaniels residences. Leake took Norris to the home of Mrs. McDaniels where she identified him as her attacker. At trial Mrs. McDaniels made an in-court identification of Norris and testified concerning her previous identification of him on the morning of the attack and at a preliminary hearing.[2]

During his investigation of the crime Officer Leake obtained the pillow case and sheets from the victim's bed as well as the undershorts which Norris was wearing at the time of his arrest. These items were sent to the F.B.I. laboratory in Washington, D. C., for analysis and the laboratory report was returned to the Sheriff's office where it apparently was placed in the case file. The report stated in effect that no hairs of negroid origin were found on the bed linen and no hairs of caucasian origin or fibers of apparent value were found on the petitioner's undershorts. From the evidence presented to the district court on the remand, it is clear that Officer Leake, the Sheriff's office and the office of the Commonwealth's attorney were aware of the report, but defense counsel were not given copies nor made aware of the result of the F.B.I. laboratory analysis. It was the practice of the Commonwealth's attorney to provide information in his files to defense counsel when specifically requested or when it appeared to him that such information should be supplied under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Norris' counsel never requested the result of the analysis and the Commonwealth's attorney concluded that in view of the negative nature of the report *Brady* did not require its production.

1. Prior to his trial for rape, Norris entered a plea of guilty to the charge of breaking and entering the Cole residence.

2. At the preliminary hearing Mrs. McDaniels was at first unable to identify Norris, but she subsequently made a positive identification. The circumstances of the identification at the preliminary hearing were fully developed during cross-examination at trial.

■ With respect to the initial confrontation between Norris and Mrs. McDaniels, we do not find it violative of the petitioner's constitutional rights. Mrs. McDaniels testified that she was held in bed by Norris for forty-five minutes which gave her ample opportunity to observe him. Her initial description of her assailant, including the type of shoes worn by him, was basically accurate, and the confrontation took place at Mrs. McDaniels' home within an hour after the crime. In *Stanley v. Cox,* 486 F.2d 48, 50 (4 Cir. 1973), we noted that "[o]ne of the show-up situations consistently found to satisfy these due process standards and not be a case of 'undue suggestiveness' is the confrontation had promptly after the crime." In that opinion we referred to the language of *Mock v. Rose,* 472 F.2d 619, 621 (7 Cir. 1972) *cert. denied* 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693, where the court stated:

"There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."

Upon the record in this case, we conclude that the "totality of the circumstances," including the promptness of the confrontation, was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the petitioner fundamental fairness. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ Turning now to the issue raised under *Brady v. Maryland, supra,* the failure of the state to furnish the defense a copy of the F.B.I. laboratory report facially falls within the doctrine of that case, and if the petitioner's constitutional right to a fair trial was prejudiced thereby, it would be no answer that defense counsel had failed to request production of the report.[3] Nor would such nondisclosure be excused by the conclusion of the prosecutor, however well-intentioned, that the report would be of no use to the defense, for "the prosecution is not to decide for the court what is admissible or for the defense what is useful." [4]

■ While the nondisclosure of the report crosses the threshold of *Brady,* it is necessary to further inquire to what degree, if any, the petitioner was prejudiced thereby for not every failure to disclose requires that a conviction be overturned. In making such an inquiry "courts must consider not only the maximizing of protection to convicted defendants but the avoidance of impossible burdens on prosecutors and the need to preserve the finality of convictions * * * ." [5] In *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842, 847 (4 Cir. 1964), Judge Sobeloff, in speaking of the necessity for a showing of prejudice, stated:

"How strong a showing is required in a given case will depend on the nature of the charge, the testimony of the state, and the role the undisclosed testimony would likely have played."

Gauged by these criteria, we are of the opinion that the nondisclosure of the report was not so prejudicial that it violated Norris' constitutional right to a fair trial. On the witness stand Officer Leake candidly testified that there was no tangible evidence connecting the defendant with the victim's house, and this testimony was fully exploited by defense counsel in his closing argument to the jury.[6] In the light of the evidence presented to the jury, it requires no speculation on our part to conclude that

3. *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842 (4 Cir. 1964).

4. *Griffin v. United States,* 87 U.S.App.D.C. 172, 183 F.2d 990, 993 (1950).

5. *United States v. Keogh,* 391 F.2d 138 (2 Cir. 1968).

6. Counsel commented upon Officer Leake's testimony as follows:

"If I remember his (Officer Leake's) testimony correctly, there was no evidence of any great struggle. There were no footprints. He said there were some smudge marks, but Mrs. McDaniels testified that there were clear footprints. He said there was no hair, nothing to indicate that this particular defendant had been there. He says if, whoever was there was like a ghost—he left no traces."

the undisclosed laboratory report, neutral in character as it was, would have played a completely innocuous role in petitioner's trial and would not have influenced the outcome of the case.

■ While we affirm the action of the district court with respect to the two issues initially raised on this appeal, a matter which first surfaced in the development of evidence on the remand persuades us that Norris is entitled to habeas corpus relief. The evidence disclosed that during his investigation of the crime, Officer Leake prepared a contemporaneous report which detailed, among other things, the information which he had obtained from various parties. The report contained the following version of the victim's first identification of Norris as her assailant:

> "I took him to Mrs. McDaniel's house, who met us at the back porch screen door and the first thing she said was 'that is the man'. I said 'Mrs. McDaniel are you sure', she hesitated and said 'I know that is the man but cannot swear to it'."

Although the Commonwealth's attorney knew of Officer Leake's report and reviewed it prior to trial, defense counsel were not furnished a copy. Understandably, they made no request for such a report since neither they nor Norris' separate counsel upon his appeal to the Virginia Supreme Court were aware of its existence until the taking of their depositions in February of 1975.

Unquestionably the report satisfies the criteria for a showing of prejudice which were delineated in *Barbee, supra.* The primary issue before the jury was the identification of the petitioner, and this expression of doubt on the part of Mrs. McDaniels was in conflict with her testimony at trial that when she first confronted Norris she was certain that he was her assailant. This evidence was of crucial value to the defense in cross-examining both Officer Leake and Mrs. McDaniels on her identification of Norris, especially in view of her equivocation at the preliminary hearing. It was evidence which had a direct bearing upon

the critical issue in the case and might "reasonably have weakened or overcome testimony adverse to the defendant." *Barbee, supra,* at 847. Since it was "of a character to raise a substantial likelihood that it would have affected the result if known at the trial, its nondisclosure cannot be ignored." [7]

Under these circumstances the failure to disclose the report rises to the level of constitutional due process and requires that Norris' conviction be set aside. Accordingly, the judgment below is reversed and the case is remanded to the district court with directions to grant the prayer of the petition, subject, of course, to the right of the state to retry Norris, should it be so advised.

*REVERSED and REMANDED.*

### ADDENDUM

Our opinion in this case was circulated prior to the decision of the Supreme Court in *United States v. Agurs,* —— U.S. ——, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). While the Court in that case refined to some degree the contours of the *Brady* doctrine, it held "that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." Since we have concluded that the content of Officer Leake's report was of such a nature as to raise a substantial likelihood that it would have affected the result of Norris' trial, we do not feel that the decision in *Agurs* requires a different result in this case.

---

7. *Ingram v. Peyton,* 367 F.2d 933, 936 (4 Cir. 1966).