09-3655-pr
Richardson v. Superintendent of Mid-Orange Correctional Facility

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: March 11, 2010                    Decided: September 20, 2010)

Docket No. 09-3655-pr

_____

JERMAINE RICHARDSON,

Petitioner-Appellee,

v.

SUPERINTENDENT OF MID-ORANGE CORRECTIONAL FACILITY,

Respondent-Appellant.

_____

Before: JACOBS, Chief Judge, LYNCH, Circuit Judge, and RESTANI, Judge.[*]

_____

Respondent, the Superintendent of Mid-Orange Correctional Facility, appeals from a

judgment of the United States District Court for the Eastern District of New York (Johnson, J.)

granting prisoner Jermaine Richardson's petition for a writ of habeas corpus. The district court

concluded that a state trial court improperly admitted testimony based on unnecessarily

suggestive identifications of Richardson by a witness in violation of Richardson's due process

_____

[*] The Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

rights.  We REVERSE.

CAMILLE O'HARA GILLESPIE, Assistant District Attorney (Leonard Joblove, Assistant District Attorney, of counsel), for Charles J. Hynes, District Attorney, Kings County, Brooklyn, NY, for Respondent-Appellant.

JONATHAN SVETKEY, Watters & Svetkey, LLP, New York, NY, for Petitioner-Appellee.

RESTANI, Judge:

Respondent, the Superintendent of Mid-Orange Correctional Facility ("the Superintendent"), appeals from a judgment of the United States District Court for the Eastern District of New York (Johnson, J.) granting Petitioner Jermaine Richardson's application for a writ of habeas corpus.  The district court concluded that the New York state trial court improperly admitted testimony based on two pretrial identifications of Richardson by witness Tacius Pierre-Louis in violation of Richardson's due process rights.  We conclude that the district court erred because Richardson failed to exhaust state remedies with respect to one of the identifications, and the determination of the New York courts that the other identification was not unnecessarily suggestive was not contrary to, or an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court.  Accordingly, we reverse.

## BACKGROUND

On the night of October 11, 1990, four men—Pierre-Louis, Raul Ruiz, Stanford Lambert, and a man known as "Shaka"—were standing near a pay phone being used by a fifth man, Denzel Coleman.  Richardson approached these men and asked about the phone.  Two other men then approached.  A robbery ensued, and shots were fired.  As a result, Ruiz and Lambert were taken to the hospital for gunshot wounds, and Coleman died.

2

A police officer heard the shots and observed four or five men running away. The officer ran after them, ordered them to stop, and arrested the two who did so, Richardson and Joseph Moore. He did not recover a weapon or any proceeds of the crime from Richardson. Another man did not stop and escaped. The officer also arrested Robert Hankins, who was sitting in the backseat of a nearby car. The officer observed Dwayne Finch throw a gun while fleeing the crime scene and recovered the gun. His partner arrested Finch.

The police asked Pierre-Louis to identify the participants in the crime at the police station, and he drove there, following a police car. As Pierre-Louis entered the station-house, he saw Richardson and two significantly taller men (presumably Moore and Hankins) in handcuffs. He immediately and spontaneously identified Richardson as one of the shooters to an unknown police officer.

About an hour later, the police showed Richardson, Moore, and Hankins together in a room to Pierre-Louis via a one-way mirror as part of an identification procedure. Pierre-Louis again identified Richardson as one of the shooters. Pierre-Louis also said that Moore looked like the person who shot Coleman but ultimately identified Finch as Coleman's killer during a lineup conducted a few hours later.

Also on the night of the shooting, some police officers presented Richardson to Ruiz at the hospital emergency room. Ruiz, agitated at the sight of Richardson, tried to jump off his gurney and yelled that Richardson was the one who shot him and took his gold chain. The next day, Ruiz identified Richardson from a photo array.

Before trial, Richardson moved to suppress Ruiz's hospital identification and Pierre-Louis's identification at the station-house showup, arguing that both had been conducted in a

3

suggestive manner.  In February 1992, following a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), the trial court denied the motion.  In March 1992, after the parties became aware of Pierre-Louis's initial, spontaneous identification of Richardson, Richardson moved to suppress that identification as well.  The trial court reopened the Wade hearing to consider this motion, but ultimately denied that motion as well.

Richardson was tried jointly with Hankins and Finch.[1]  At trial, Pierre-Louis identified Richardson and testified that Richardson shot Ruiz.  Ruiz also identified Richardson and testified that Richardson tried to take his chain and shot him.  Both witnesses testified about their pre-trial identifications of Richardson.  Richardson testified that he did not participate in the robbery or shooting and merely ran away when someone started shooting.  The jury found Richardson guilty of all counts remaining against him, including one count of murder in the second degree, two counts of attempted murder in the second degree, two counts of assault in the first degree, two counts of assault in the second degree, one count of reckless endangerment in the first degree, one count of criminal possession of a weapon in the second degree, one count of criminal possession of a weapon in the third degree, and four counts of robbery in the first degree.[2] Richardson was sentenced to fifteen years to life in prison.

Richardson appealed, arguing that the first, accidental station-house identification by Pierre-Louis was impermissibly suggestive and influenced each of Pierre-Louis's subsequent identifications of Richardson.  Richardson no longer argued, however, that the second, official showup at the police station was unduly suggestive in its own right, nor did he challenge the

---

[1]  Apparently, the charges against Moore were dismissed or dropped before trial.

[2] The jury found Hankins not guilty on all counts, but found Finch guilty on all counts.

4

identification by Ruiz in the hospital.  The Appellate Division of the New York Supreme Court affirmed his conviction, reasoning that Pierre-Louis's viewing of Richardson "was accidental, unarranged, not attributable to any misconduct on the part of the police, and not unduly suggestive."  People v. Richardson, 622 N.Y.S.2d 966, 966–67 (N.Y. App. Div. 1995).  In April 1995, the New York Court of Appeals denied Richardson's application for leave to appeal.  People v. Richardson, 651 N.E.2d 929 (N.Y. 1995).  After several failed attempts to obtain post-conviction relief and related appeals in state courts, Richardson filed a petition for habeas corpus in federal district court.  Richardson v. Superintendent of Mid-Orange Corr. Facility, 639 F. Supp. 2d 266, 279-80 (E.D.N.Y. 2009).  The district court granted Richardson's petition, finding that the conclusion of the state courts that Pierre-Louis's identifications were not unduly suggestive was contrary to clearly established federal law and that the admission of Pierre-Louis's identification testimony violated Richardson's due process rights.  Id. at 284–96.  The Superintendent now appeals.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 2253(a) to review a district judge's final order in a habeas corpus proceeding.  "We review de novo the District Court's grant of habeas corpus and we review its factual findings for clear error."  Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003).

## DISCUSSION

**I.      Richardson failed to exhaust state remedies with respect to the second identification.**

Preliminarily, the Superintendent claims that Richardson is procedurally barred from challenging Pierre-Louis's second station-house viewing because Richardson did not exhaust that

5

challenge before the state courts.[3]  This claim has merit.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Exhaustion requires that the prisoner "fairly present" the federal claim "in each appropriate state court (including a state supreme court with powers of discretionary review)."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citation omitted).  A prisoner has not fairly presented a federal claim before a state court if the federal claim is not mentioned in the prisoner's state court brief.  See id. at 32.

Here, Richardson challenges both the first and second pre-trial identifications, but did not directly challenge the second, official station-house identification before the state appellate court. Richardson's Appellate Division brief argued that the first station-house viewing was impermissibly suggestive.  Although his brief stated that "[g]iven the total lack of effort on the part of the police to reduce the suggestiveness herein it is apparent that this identification was not reliable" and that "[e]ach of Louis' subsequent identifications of [Richardson] was premised upon th[e] initial highly suggestive procedure," Richardson's App. Div. Br. 35, it did not describe the second identification or argue that the official showup was impermissibly

_____

[3] Although the Superintendent makes this nonexhaustion argument for the first time on appeal, he has not waived the argument.  See 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").  Moreover, the Superintendent had no reason to argue failure to exhaust or procedural default in the district court, because Richardson's pleadings never claimed that the second identification was independently suggestive.

suggestive.  As the Appellate Division was not expected to look beyond Richardson's brief to locate the claim that the second station-house viewing was suggestive, Richardson did not fairly present that claim before the Appellate Division.[4]  See Baldwin, 541 U.S. at 29.  Richardson therefore failed to exhaust his claim that the second identification was improper.

Were we to dismiss Richardson's petition without prejudice to allow him to exhaust his claim in state court, New York procedural rules would bar him from raising the claim at this point.  See N.Y. Crim. Proc. Law § 440.10(2)(c); Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000).  When a petitioner can no longer "present his unexhausted claim of trial error to the state courts, we deem the claim procedurally barred." Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009); see Coleman v. Thompson, 501 U.S. 722, 732 (1991).  Because Richardson shows no cause for or prejudice from the failure to raise the claim, and failing to consider it will not result in a "fundamental miscarriage of justice," his claim cannot proceed.  Coleman, 501 U.S. at 750.

II.     **The state court's determination that the first identification was not improper was not contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court.**

The Superintendent contends that the Appellate Division's rejection of Richardson's claim that the trial court should have suppressed Pierre-Louis's first, accidental identification was not contrary to or an unreasonable application of Supreme Court precedent.  We agree.

Under AEDPA,

[a]n application for a writ of habeas corpus on behalf of a person in custody

---

[4] Richardson's application to the New York Court of Appeals for leave to appeal is not in the record.  According to Richardson's habeas petition, one of the grounds for the appeal listed in that application was "improper identification."  Pet. 2.

7

> pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). "Clearly established Federal law" refers only to the holdings of Supreme Court decisions. Carey v. Musladin, 549 U.S. 70, 74 (2006). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in" the Supreme Court's cases or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002). A state court decision is "an unreasonable application of" clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Id.

The Supreme Court has determined that "judged by the 'totality of the circumstances,' the conduct of identification procedures may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law." Foster v. California, 394 U.S. 440, 442 (1969) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)). This "is a fairly permissive standard," and "[a] court applying this standard to the facts of a specific case is . . . entitled to significant 'leeway' when we review its decision for reasonableness." Brisco v. Ercole, 565 F.3d 80, 90 (2d Cir. 2009); see also Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). Unnecessary suggestiveness alone, however, does not require the exclusion of identification testimony. See Manson v. Brathwaite, 432 U.S. 98, 112–13 (1977). Rather, "reliability is the linchpin in determining the admissibility of identification testimony."

8

Id. at 114.

### A. Suggestiveness

Here, the state courts recognized that unduly suggestive identifications may be improper. See Richardson, 622 N.Y.S.2d at 966–67. The trial court decided not to suppress Pierre-Louis's initial identification of Richardson at the station-house because it was voluntary and spontaneous, and there was "no indication that the police officers had any prearranged knowledge that the[] three guys would be standing there." App. 170–72. The Appellate Division affirmed the decision, concluding that Pierre-Louis's initial viewing of Richardson was not unduly suggestive. Richardson, 622 N.Y.S.2d at 966–67.

This conclusion is not contrary to clearly established Supreme Court precedent. No Supreme Court case has addressed a materially indistinguishable set of facts involving such an accidental, unarranged viewing. Rather, every Supreme Court case addressing the suggestiveness of pretrial identifications in the due process context has involved police-conducted identification procedures. See Manson, 432 U.S. at 101 (display of the suspect's photograph); Neil v. Biggers, 409 U.S. 188, 195 (1972) (showup); Coleman v. Alabama, 399 U.S. 1, 6 (1970) (plurality opinion) (lineup); Foster, 394 U.S. at 441–43 (two lineups and a showup); Simmons v. United States, 390 U.S. 377, 380–82 (1968) (display of the suspects' photographs); Stovall, 388 U.S. at 302 (showup). Thus, it cannot be said that the state decided this case differently than the Supreme Court has "on a set of materially indistinguishable facts." Bell, 535 U.S. at 694.

Given the absence of any holding from the Supreme Court addressing circumstances like these, we also conclude that the state courts did not apply clearly established law unreasonably in finding that the encounter was not suggestive. See Carey, 549 U.S. at 77. Indeed, many federal

9

circuit courts have found unarranged or accidental encounters between a witness and a criminal defendant not to be impermissibly suggestive, particularly where there is no indication to the witness that the defendant was arrested as a suspect in the witness's case. See, e.g., United States v. Boykins, 966 F.2d 1240, 1242–43 (8th Cir. 1992); Reese v. Fulcomer, 946 F.2d 247, 259, 261 (3d Cir. 1991); United States v. Thevis, 665 F.2d 616, 643–44 (5th Cir. Unit B 1982), superseded in part on other grounds by Fed. R. Evid. 804(b)(6); United States v. Colclough, 549 F.2d 937, 941–42 (4th Cir. 1977); Mock v. Rose, 472 F.2d 619, 621 (6th Cir. 1972). This Court is no exception. See United States v. Di Stefano, 555 F.2d 1094, 1101–02 (2d Cir. 1977); United States v. Gentile, 530 F.2d 461, 468 (2d Cir. 1976).

At the station-house, no one indicated that Richardson or anyone else in the room may have been a suspect in the crime Pierre-Louis witnessed. Rather, Pierre-Louis spontaneously identified Richardson as one of the shooters immediately upon entering the police station. Although Pierre-Louis might have anticipated that the police would have a suspect in custody after he was asked to make an identification, he was given no reason to expect to see any suspects in the first room he entered. The fact that Richardson was handcuffed is of limited significance, as people in handcuffs are not unexpected or unusual sights in a police station, and handcuffs did not link Richardson to the crime Pierre-Louis witnessed.

It is true, as the district court suggests, that Pierre-Louis's attention may have been drawn to Richardson because Richardson was significantly shorter than the two men next to him, but this too would not have linked Richardson to any particular crime. And while the police could have been more careful in coordinating the placement of the suspects and arrival of the witnesses, see Richardson, 639 F. Supp. 2d at 289, it is too much of a stretch to say that

10

circumstances of Pierre-Louis's initial viewing are equivalent to "[t]he practice of <u>showing</u> suspects singly to persons for the purpose of identification" that "has been widely condemned." <u>Stovall</u>, 388 U.S. at 302 (emphasis added). In the light of the significant leeway to which the state courts are entitled, we hold that the state courts' conclusion that Pierre-Louis's accidental, spontaneous identification of Richardson upon entering the police station was insufficiently suggestive to trigger further due process inquiry was not an unreasonable application of clearly established federal law. <u>See</u> <u>United States v. Lopez-Lopez</u>, 282 F.3d 1, 8, 11 (1st Cir. 2002) (holding that a spontaneous accidental identification by two law enforcement officials of a suspect in handcuffs upon their return to the police station was not impermissibly suggestive); <u>Mock</u>, 472 F.2d at 621 (holding that a robbery victim's spontaneous, unarranged identification of a suspect who was being escorted down a hallway at a police station was not impermissibly suggestive).

## B.     Reliability

In any event, even an unnecessarily suggestive identification "does not violate due process so long as the identification possesses sufficient aspects of reliability." <u>Manson</u>, 432 U.S. at 106. In making a reliability determination, a court should consider: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness' degree of attention," (3) "the accuracy of his prior description of the criminal," (4) "the level of certainty demonstrated at the confrontation," and (5) "the time between the crime and the confrontation." <u>Id.</u> at 114. These five factors are weighed against "the corrupting effect of the suggestive identification." <u>Id.</u> Each of these factors "requires a finding of historical fact," but "[t]he ultimate conclusion as to whether the facts as found state a constitutional violation is a mixed

11

question of law and fact." Sumner v. Mata, 455 U.S. 591, 597 n.10 (1982). The district court's findings as to these factors were correct, but it erred in concluding that the balance of factors indicate that the identification was unreliable.[5]

First, the district court found that Pierre-Louis had sufficient opportunity to view the criminals because a streetlight illuminated the crime scene, Pierre-Louis had a clear view of the criminals' faces, and Pierre-Louis remained close to the criminals during the incident, which lasted about two minutes. Richardson, 639 F. Supp. 2d at 291. Second, the district court found that Pierre-Louis's attention was not sufficiently focused on the criminals' faces because he was frightened in the presence of the guns and was unable to recall specific physical characteristics of the criminals. Id. at 291–92. Third, the district court found no evidence that Pierre-Louis gave any description of the criminals prior to the initial identification, and found that Pierre-Louis's subsequent descriptions of the person who shot Ruiz only mentioned the shooter's youth and short stature. Id. at 292. Fourth, the district court found that Pierre-Louis demonstrated a high degree of certainty during both the accidental confrontation and the official showup. Id. Finally, the district court found that only an hour or two elapsed between the commission of the crime and the two confrontations. Id. at 293. The trial testimony supports these findings.

Three of these factors—the witness' opportunity to view the criminal, the level of certainty demonstrated at the confrontation, and the short time between the crime and the confrontation—indisputably weigh in favor of reliability. See id. at 291–93. We accept the district court's conclusion that Pierre-Louis's lack of focus on the criminals' faces weighs against

_____

[5] Neither the trial court nor the Appellate Division made any findings regarding the reliability of Pierre-Louis's testimony.

12

reliability, id. at 291–92, but this factor does not seem particularly powerful, given how quickly and how confidently Pierre-Louis identified Richardson in the initial unprompted station-house confrontation. The absence of a prior description weighs neither for nor against reliability. See United States v. Concepcion, 983 F.2d 369, 377–78 (2d Cir. 1992). Although a witness' identification of someone who does not match the witness' prior description weighs heavily against reliability, the absence of a prior description does not carry the same weight. See Chavis v. Henderson, 638 F.2d 534, 537 (2d Cir. 1980). On balance, these factors indicate that Pierre-Louis's spontaneous identification was reliable.

Like the district court, we are concerned by the possibility that Richardson was an innocent bystander and that Pierre-Louis misidentified Richardson as a shooter based on a subconscious but inaccurate mental association between Richardson, who was present on the scene, and the young, short perpetrator. See Richardson, 639 F. Supp. 2d at 294 & n.11. We note in this regard Pierre-Louis's tentative misidentification at the official showup of Moore as the person who shot Coleman. See id. at 294. On the other hand, the independent and rather dramatic identification by Ruiz, who had to be restrained from jumping off his gurney when he saw Richardson, corroborates Pierre-Louis's testimony. Moreover, Richardson does not dispute that he was at the crime scene; Richardson argues only that Pierre-Louis misperceived or misremembered what he was doing when the robbery occurred. Accordingly, any possible mistake Pierre-Louis made when he first identified Richardson probably would have been the result of his inaccurate mental association rather than the nature of the initial confrontation. Pierre-Louis's certainty from the outset that Richardson was one of the robbers, not an innocent bystander, did not hinge on the specific identification procedures at the station-house. His initial

13

identification was reliable because it is clear from the record that Pierre-Louis would have identified Richardson as the shooter even if proper lineup procedure had been used. Since "reliability" is the linchpin of this analysis, we find that Richardson's due process rights were not violated. His certainty from the outset that Richardson was one of the robbers, as opposed to an innocent bystander, did not hinge on specific identification procedures.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED.